UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ TIJERINA, an individual, on behalf of herself and on behalf of all persons similarly situated., <br><br> Plaintiff, <br><br> v. <br><br> UNITED AIRLINES, INC., a Corporation; and DOES 1 through 50, inclusive, <br><br> Defendant. | Case No.: 24-CV-02466-BEN-SBC <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

Before the Court is Plaintiff Beatriz Tijerina's Motion to Remand this action to the Superior Court of California, County of San Diego, filed on January 24, 2025. (ECF No. 10). Defendant United Airlines, Inc. filed an Opposition on February 14, 2025 (ECF No. 11), and Plaintiff filed a Reply on February 24, 2025. (ECF No. 12). United also filed a Notice of Supplemental Authority on March 31, 2025 (ECF No. 13), citing *Perez v. Rose Hills Co.*, 131 F. 4th 804, 2025 WL 811096 (9th Cir. 2025). The Court took the motion under submission without a hearing. For the reasons stated below, the Motion to Remand is DENIED.

1

## I. BACKGROUND

On November 19, 2024, Plaintiff filed a class action complaint in San Diego County Superior Court, alleging violations of the California Labor Code, including failure to pay minimum and overtime wages, provide meal and rests periods, issue accurate wage statements, reimburse business expenses, and pay timely wages, as well as unfair competition and individual claims of discrimination, retaliation, and wrongful termination.  Compl. (ECF No. 1-5) ¶¶ 8-22.  The proposed class includes all non-exempt employees of United Airlines in California from April 1, 2023, to the present, originally estimated at 13,600 employees.  *Id*. ¶ 25; Karpierz Decl. (ECF No. 1-2) ¶ 7.

On December 26, 2024, United Airlines removed the case to this Court under the Class Action Fairness Act (CAFA), 29 U.S.C. §§ 1332(d), 1441, 1446, and removal procedures under 29 U.S.C. § 1453, asserting that the class exceeds 100 members, minimal diversity exists, and the amount in controversy exceeds $5 million.  Notice of Removal (ECF No. 1) ¶¶ 6-36. Specifically, United estimates the amount in controversy to be $137,186,540.  Pl's Opp'n at 12.  Plaintiff moves to remand, arguing that United Airlines failed to establish the amount in controversy by a preponderance of the evidence, and relies on unsupported assumptions about violation rates.  Mem. of P & A. (ECF No. 10-1) at 8-22.

## II. LEGAL STANDARD

The Class Action Fairness Act grants federal jurisdiction over class actions where: (1) the proposed class exceeds 100 members; (2) minimal diversity exists between at least one class member and the defendant; (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and (4) no statutory exceptions apply. 28 U.S.C § 1332(d).  United, as the removing defendant, bears the burden of establishing jurisdiction by a preponderance of the evidence when challenged.  *Rose Hill*, 131 F.4th at 807.  In calculating the amount in controversy, defendants may rely on reasonable assumptions based on the complaint's allegations, without needing to submit evidence to

justify violation rates, provided the assumptions are a reasonable interpretation of the complaint. *Id.*

## III. DISCUSSION

### A. Class Size and Diversity

The parties do not dispute that the class exceeds 100 members, with United Airlines employing at least 13,600 non-exempt employees in California during the relevant period. Karpierz Decl. ¶ 7. Minimal diversity is also uncontested: Plaintiff is a California citizen, while United Airlines is a citizen of Delaware, Illinois, and possibly Texas. *Id.* ¶¶ 3-4, 6; *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). These requirements are satisfied.

### B. Amount in Controversy

The issue is whether United has demonstrated, by a preponderance of evidence, that the amount in controversy exceeds $5 million. It has. United estimates the amount in controversy to be $137,186,540, comprising damages for meal and rest period premiums, unpaid overtime, and attorneys' fees, while excluding additional claims such as minimum wage violations and wage statement penalties. NOR ¶ 31. Plaintiff challenges this estimate, arguing that United's assumptions about violation rates are unsupported and inconsistent with the Complaint's allegations of sporadic violations occurring "from time to time" or "periodically." Mem. at 15-18.

For its notice of removal, United relied on the Karpierz Declaration, which estimated a class size of 13,600 employees, 1,101,600 workweeks (adjusted to 90 percent to account for absences), and a minimum hourly rate of $18.51. Karpierz Decl. ¶¶ 7-12. For meal and rest period premiums, United assumed a 10 percent violation rate, meaning one rest period premium per workweek and one meal period premium every other workweek, across 1,101,600 workweeks at $18,51 per hour, totaling $30,585,924 ($20,390,616 for rest periods and $10,195,308 for meal periods). NOR ¶¶ 23-24. For unpaid overtime, United assumed one hour of unpaid overtime per workweek for 1,101,600 workweeks at $ 27.77 per hour (1.55 times $18.51), totaling $30,591,432. *Id.*

¶¶ 25-26. For attorneys' fees, United applied the Ninth Circuit's 25 percent benchmark to the $61,177,356 in estimated potential damages, yielding $15,294,339. *Id.* ¶¶ 29-30.; *Arias*, 936 F.3d at 927.

United has since supplemented these figures based on refined class definitions and updated data sets. According to the Supplemental Karpierz Declaration (ECF No. 11), the class comprises of 17,031 putative members who collectively worked approximately 569,000 workweeks between April 2023 to December 20, 2024, with an average base hourly rate increasing to at least $27.20 based on the Singer Declaration (ECF No. 11 ¶ 15), excluding the higher-earning flight attendants. Using the same 10 percent violation assumptions, the estimated rest period totals now are approximately $15,476,800[1], and the meal period premium is approximately $7,738,400[2], yielding $23,215,200 [3]for both categories. Applying the updated $27.20 base wage to unpaid overtime (1 hour per workweek), the total increases to $38,836,800[4]. The subtotal of these revised damages is $62,052,000[5], to which a 25 percent fee benchmark results in $15,513,000 [6]in attorneys' fees. The total updated amount in controversy stands at approximately $77,565,000[7].

---

[1] Rest Period Penalty= Total Workweeks × Hourly Rate =569,000 workweeks × $27.20 per hour = $15,476,800.
[2] Meal Period Penalty = 569,000 × 0.5 (every other workweek, i.e., 0.5 violations per workweek) × 27.20 =$7,738.400.
[3] Combined Penalties=Rest Period + Meal Period= $15,476,800 + $7,738,400 = $23,215,200
[4] 569,000 × (1.5 overtime × 27.20) = 569,000 × 40.80 =$38,836,800.
[5] The subtotal of updated damages, excluding attorneys' fees, combines rest period penalties ($15,476,800), meal period penalties ($7,738,400), and unpaid overtime ($38,836,800), for a total of: $15,476,800 + $7,738,400 + $38,836,800= $62,052,000
[6] Attorneys' fees are estimated at 25% of the projected damages total of $62,052,000, consistent with the Ninth Circuit's benchmark for class actions: $62,052,000 × 0.25 =$15,513,000
[7] The total amount in controversy includes the subtotal of projected damages ($62,052,000) and attorneys' fees calculated at the Ninth Circuit's 25% benchmark: $62,052,000 + (0.25 × $62,052,000) =$62,052,000 + $15,513,000 =$77,565,000.

1  United also notes that the 17,031 putative class members worked at least 796,000 shifts
2  of eight hours or more during the relevant period, reinforcing the plausibility of the
3  assumed one-hour-per-week unpaid overtime rate.  *See* Supplemental Karpierz Decl. ¶
4  20.
5       This updated calculation not only confirms that CAFA's $5 million threshold
6  remains satisfied, but it also reflects a jurisdictional basis that remains conservative and
7  supported by reliable assumptions and empirical workforce data.  Considering *Rose Hills,*
8  which reaffirmed that defendants may rely on reasonable assumptions grounded in the
9  complaint and internal records to estimate jurisdictional amounts, United's methodology
10 aligns with Ninth Circuit authority and remains sufficient to sustain removal under
11 section 1332(d).
12      United defends its 10 percent violation rate as conservative, citing cases accepting
13 similar rates for complaints alleging a "policy and practice" of violations tempered by
14 "from time to time" language.  *Cavada v. Inter-Continental Hotels Grp., Inc.,* 2019 WL
15 5677846, at *7 (S.D. Cal. Nov. 1, 2019) (20% violation rate); *Shachno v. Marriott Int'l,*
16 *Inc.*, 2023 WL 316367, at *7 (S.D. Cal. Jan. 19, 2023) (10% violation rate).
17      Plaintiff counters that United's assumptions lack evidentiary support and are
18 "pulled from thin air," as the complaint describes violations occurring only "from time to
19 time" or "periodically," suggesting infrequent occurrences.  Compl. ¶ ¶ 8, 11, 12, 87, 91;
20 Mem. at 15-18.  Plaintiff argues that United's access to payroll records required it to
21 provide specific evidence of violation rates, citing cases where courts remanded for
22 unsupported assumptions.  *Benitez v. Hyatt Corp*., 722 F. Supp. 3d 1094, 1101 (S.D. Cal.
23 2024), citing *Harris v. KM Indus., Inc.,* 980 F.3d 694, 701-702 (9th Cir. 2020); *Urias v.*
24 *Labcorp Peri-Approval & Commercialization, Inc.* , 710 F. Supp. 3d 838, 845-848 (S.D.
25 Cal. 2024);*Guiniling v. Escondido Med. Invs. Ltd. P'ship Life Care Ctr. Of Escondido*,
26 2023 U.S. Dist. LEXIS 24389, at *6-7 (S.D. Cal. Feb. 13, 2023).  Plaintiff also argues
27 that United's attorneys' fees estimate lacks evidentiary support, citing *Fritsch v. Swift*
28 *Transp. Co. of Ariz., LLC.*, 899 F. 3d 785, 796 (9th Cir. 2018). Mem at 20-21.

  The Ninth Circuit's decision in *Rose Hills* controls. *Rose Hills* holds that a removing defendant may rely on reasonable assumptions based on the complaint's allegations to estimate the amount in controversy, without needing to submit evidence to justify violation rates, provided the assumptions are a reasonable interpretation of the complaint. 131 F. 4th at 807. An assumption is not unreasonable merely because a lower rate could be assumed. *Id*. at 808.

  United's 10 percent violation rate for meal and rest period premiums and one-hour-per-week overtime assumption are reasonably interpreted from the Complaint. The Complaint alleges a "policy and practice" of failing to provide meal and rest periods and record overtime, tempered by "from time to time" and "periodically" language, indicating a systematic but not universal pattern of violations. Compl. ¶¶ 49, 77-78, 86-91. Courts have upheld a 10 percent violation rate for similar allegations, finding it conservative compared to a 25 percent rate for "policy and practice" claims. *Cavada*, 2019 WL 5677846, at *7; *Shachno*, 2023 WL 316367, at *7. Likewise, one hour of unpaid overtime per workweek aligns with precedent for "policy and practice" allegations. *Vallejo v. Sterigenics U.S., LLC.*, 2021 WL 2685348, at *4 (S.D. Cal. June 29, 2021).

  Plaintiff's cited cases (*Benitez, Urias, Guiniling*) required evidentiary support for violation rates. *Rose Hills* explicitly rejects such a requirement. 131 F.4th at 807. The Karpierz Declarations provide sufficient "real evidence" for class size, workweeks, and pay rates, meeting *Rose Hills'* standards for grounding other calculation elements. Although Plaintiff argues that "from time to time" suggests sporadic violations, *Rose* clarifies that vague language like "at times" permits a range of reasonable assumptions, and United's 10 percent rate falls within that range. *Rose Hills*, at 108; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

  For attorneys' fees, United's application of the 25 percent benchmark is reasonable, as courts have accepted it for CAFA removal calculations. *Staton*, 327 F.3d at 968; *Evers v. La-Z-Boy Inc.*, 2022 WL 2966301, at *12 n.8 (S.D. Cal. July 27, 2022). While *Fritsch*

requires evidence of fees, United's estimate is derived from supported damages calculations, and Plaintiff provides no contrary evidence. 899 F.3d at 796.

United's $137,186,540 estimate significantly surpasses the $5 million CAFA threshold. Even halving the violation rate to 5 percent, the amount would likely remain above $5 million, given the large class size and multiple claims. United's conservative assumptions are reasonable based on the claims asserted in the Complaint and supported by precedent, and satisfy the preponderance standard.

### C. CAFA Exceptions

No CAFA exceptions apply. The Local Controversy and Home State exceptions require United to be a California citizen, but United is a citizen of Delaware and Illinois. 29 U.S.C § 1332(d)(4); NOR ¶¶ 34-35. Plaintiff does not argue otherwise.

### D. Procedural Compliance

United complied with CAFA's procedural requirements, filing the Notice of Removal within 30 days of service (November 25, 2024) and one year from the action's commencement (November 19, 2024). 28 U.S.C § 1446(b)(c); NOR ¶ 4. Venue is proper in this District, and all required documents were attached. *Id*. ¶¶ 37-42

## IV.  CONCLUSION

United has established, by a preponderance of the evidence, that the amount in controversy exceeds $5 million, satisfying CAFA's jurisdictional requirements. Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED**.

DATED:   May 8, 2025

**HON. ROGER T. BENITEZ**
United States District Judge